\*\*E-Filed 3/27/2007\*\*

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ROGER L. SCHAAF, | Case Number C 05-05085 JF |
| Plaintiff, | ORDER[1] GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | [re: docket nos. 12, 15] |
| Defendant. | |

Plaintiff Roger Schaaf and Defendant Jo Anne B. Barnhart, Commissioner of Social Security, have filed cross-motions for summary judgment. The Court has considered both the administrative record and the papers submitted by the parties. For the reasons discussed below, Defendant's motion for summary judgment will be granted, and Plaintiff's motion for summary judgment will be denied.

**I. BACKGROUND**

Plaintiff applied for Social Security disability insurance benefits on March 3, 2003, contending that he became disabled on January 1, 2002, as a result of osteoarthritis of the spine,

---

[1] This disposition is not designated for publication and may not be cited.

and intense low back pain and weakness. Transcript 56, 68. On September 11, 2003, Plaintiff alleged that he felt club foot pain and suffered from irritable bowel syndrome. *Id.* at 99. On December 17, 2004, after the claim had been denied, Administrative Law Judge Sandra K. Rogers ("the ALJ") rendered an unfavorable decision on Plaintiff's appeal, finding that Plaintiff is not disabled. *Id.* at 17-27. The ALJ found that Plaintiff was not entirely credible in his description of his health problems. *See e.g. id.* at 24. Among other things, the ALJ concluded that (1) Plaintiff could perform a significant range of light work; (2) Plaintiff could return to his past work; and (3) alternatively, Plaintiff could perform a significant range of sedentary work. *Id.* at 26-27.

Plaintiff requested review of the ALJ's decision by the Appeals Council. On October 21, 2005, the Appeals Council denied the request and advised Plaintiff that he had sixty days to seek judicial review of the commissioner's decision. *Id.* at 6-8. Plaintiff filed the instant complaint on December 8, 2005. On September 5, 2006, Plaintiff moved for summary judgment. On November 21, 2006, Defendant filed a cross-motion for summary judgment. Plaintiff opposed the cross-motion on December 4, 2006. The matter was taken under submission without oral argument.

## II. LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision denying Plaintiff benefits. The Commissioner's decision (here the decision of the ALJ) will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance - it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1257. When determining whether substantial evidence exists to support the ALJ's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support

more than one rational interpretation, the Court must defer to the decision of the ALJ. *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

A person is "disabled" for purposes of receiving social security benefits if he or she is unable to engage in any substantial gainful activity due to a physical or mental impairment that is expected to result in death or that has lasted or is expected to last for a continuous period of at least twelve months. *Drouin*, 966 F.2d at 1257; *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden of proof is on the claimant as to steps one through four. *Id*. At step five, the burden shifts to the Commissioner. *Id*. If a claimant is found to be "disabled" or "not disabled" at any step in the sequence, the Commissioner need not consider subsequent steps. *Id*.

The five steps are:

Step 1. Is the claimant presently working in a substantially gainful activity? If so, the claimant is not disabled within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. *Id*.

Step 2. Is the claimant's impairment severe? If not, then the claimant is not disabled and is not entitled to disability insurance benefits. If the claimant's impairment is severe, the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. *Id*.

Step 3. Does the impairment meet or equal one of a list of specific impairments described in the regulations? If so, the claimant is disabled and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id*.

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. *Id*. at 1099.

Step 5. Is the claimant able to do any other work? If not, then the claimant is disabled and therefore entitled to disability insurance benefits. If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in significant numbers in the national economy that claimant can do: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines. If the Commissioner meets this burden, the claimant is not disabled and therefore not entitled to disability insurance benefits. If the Commissioner cannot meet this burden, the claimant is disabled and therefore entitled to disability benefits. *Id*.

## III. DISCUSSION

1. The ALJ's Conclusion that Plaintiff Could Perform a Significant Range of Light Work

Plaintiff argues that the ALJ erred by making the following finding:

> The claimant has had the residual functional capacity to perform a significant range of "light" work, lifting and carrying up to 20 lbs. occasionally and 10 lbs. frequently, and standing and walking up to 2-4 hours cumulatively and sitting up to 6 hours cumulatively, allowing for occasional changes of position and usual breaks. The claimant should not more than occasionally be required to stoop, climb, crawl, or kneel, but would have no objective limitations in use of his upper extremities.

Transcript 26. Plaintiff contends that the ALJ's conclusion that Plaintiff is able to perform a "significant range of 'light' work" is contradicted by the ALJ's finding that Plaintiff is unable to stand and/or walk for more than 2-4 hours cumulatively.

The relevant regulation defines "light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do

4

1   　　　sedentary work, unless there are additional limiting factors such as loss of fine
2   　　　dexterity or inability to sit for long periods of time.

3   20 C.F.R. § 404.1567(b). Since work is considered "light" when it "involves sitting most of the
4   time with some pushing and pulling or arm or leg controls," a finding that Plaintiff was unable to
5   stand and/or walk for more than 2-4 hours cumulatively does not contradict a finding that
6   Plaintiff can perform a "significant range of 'light' work."

7   2.　　　The ALJ's Conclusion that Plaintiff Was Capable of Returning to His Past Work

8   　　　Plaintiff argues that the ALJ erred in concluding that Plaintiff was able to perform his
9   past work. The basis of this contention is not entirely clear from Plaintiff's motion. In his initial
10  moving papers, Plaintiff "submits that the ALJ failed to compare the residual functional capacity
11  with the demands of his past relevant work," Plaintiff's Motion 16, and that "[t]he ALJ's residual
12  functional capacity finding, albeit flawed, still can only be read as concluding that [Plaintiff]
13  cannot perform the tasks of a sales representative type [sic] of computer software either as he
14  performed it, or as 'generally performed' in the national economy." *Id.* at 17. Plaintiff appears
15  to suggest that the underlying flaw in the ALJ's reasoning is that the relevant work requires
16  travel, but that Plaintiff cannot travel given his current health restrictions. Yet in his response to
17  Defendant's motion, Plaintiff argues that there is no basis in the record for the ALJ's finding that
18  Plaintiff could perform a position that limited him to standing and walking up to two to four
19  hours cumulatively. Response 1-2.

20  　　　The ALJ defined Plaintiff's "past relevant work" as employment as a "computer software
21  salesperson, marketer, and consultant." Transcript 25. The ALJ treated sales positions that
22  involve travel and those that do not as interchangeable, even if the former is higher paying.
23  Plaintiff does not object to the characterization of his past work or to the equal treatment of these
24  different types of positions within the overall category of computer software salesperson,
25  marketer, and consultant. *See Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986) ("The claimant
26  has the burden of proving an inability to return to his former type of work and not just to his
27  former job.") (citing *Gray v. Heckler*, 760 F.2d 369, 372 (1st Cir.1985) (per curiam)). There is at
28  least some evidence in the record supporting a conclusion that Plaintiff could perform the job of

a software salesman in a position that does not involve travel. The vocational expert testified that Plaintiff had appropriate skills for a sales job that did not involve travel and that such a position would be categorized as sedentary. Transcript 317. The vocational expert also testified that such positions provide "some limited sit-stand ability," *id.* at 318, which is relevant in that the ALJ concluded elsewhere that Plaintiff could sit up to six hours cumulatively "allowing for occasional changes of position and usual breaks." *Id.* at 26.

While the above discussion suggests that Plaintiff's argument is without merit, the Court agrees with Plaintiff that there are at least three deficiencies in the record with respect to the past relevant work inquiry. First, while the vocational expert testified that there are a limited number of sale jobs that do not require travel, the ALJ did not inquire into the number of such jobs available. *Id.* at 316. Second, there appears to be some confusion in the record as to whether these jobs that do not require travel are sales jobs or jobs outside the scope of Plaintiff's prior relevant work, but for which he has transferable skills. *See e.g. id.* at 317-18. Third, the ALJ did not inquire in a meaningful fashion into whether Plaintiff would have been able to perform such a job given his limitation to six hours of cumulative sitting. *See id.* at 318. The ALJ's opinion does not clarify these issues. *Id.* at 25-27. However, in light of the ALJ's alternative conclusion, discussed below, these deficiencies are not dispositive.

3.   The ALJ's Conclusion that Plaintiff Could Sit for Six Hours in an Eight Hour Work Day

The ALJ concluded in the alternative that if the claimant could not return to his past relevant work, he could perform sedentary occupations. *Id.* at 27. Plaintiff challenges this conclusion on the basis that Plaintiff cannot sit for eight hours a day.[2] However, sedentary occupations do not require Plaintiff to sit for eight hours a day:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs

---

[2] Section C of Plaintiff's brief consists of a six line heading, three lines of text, and three lines quoted from the transcript of the hearing. Plaintiff's Motion 17. It appears that this section was cropped unintentionally. The Court addresses Plaintiff's apparent argument.

Case No. C 05-5085 JF
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(JFLC1)

1     are sedentary if walking and standing are required occasionally and other
2     sedentary criteria are met.

3  20 C.F.R. § 404.1567(a).  While the testimony is not clear regarding Plaintiff's ability to stand
4  occasionally in a sales position that does not require travel, Defendant can also meet her burden
5  of showing that alternate employment exists by reference to the Medical-Vocational Guidelines.
6  *Tackett*, 180 F.3d at 1099.  The ALJ found that "[a]lthough the claimant's exertional limitations
7  do not allow him to perform the full range of 'light' work, a finding of 'not disabled' would be
8  directed by Medical-Vocational Rule 202.03, and even at the 'sedentary' level, by 201.03."
9  Transcript 27; *see also* 20 C.F.R. Pt. 220, App. 2 (detailing Medical-Vocational Rules).  Plaintiff
10 does not attack this finding.

11 4.     The ALJ's Failure to Make a Finding of the Requirement of Very Little Adjustment

12        Plaintiff challenges the ALJ's failure to make a finding that any new job would require
13 very little adjustment for transferability of skills.  However, Plaintiff identifies nothing in the
14 regulations governing sedentary and light work that requires an explicit finding as to this point.
15 The vocational expert testified that Plaintiff had developed substantial computer skills and
16 customer service skills that could be readily transferred.  Transcript 317.  Since an implied
17 finding that a new job would require little adjustment is supported by the record, the ALJ did not
18 commit reversible error in this regard.

19 5.     Lack of Legal Representation

20        Plaintiff argues that he did not make a well-informed decision to waive his right to
21 counsel and challenges the adequacy of the ALJ's inquiry as to this point.  Plaintiff cites to the
22 Manual on the Social Security Administration Hearings, Appeals and Litigation Law, or
23 "HALLEX," which provides as follows:

24     Generally, the content and format of the opening statement are within the
       discretion of the ALJ. However, if the claimant is unrepresented, the ALJ must
25     ensure that the claimant is capable of making an informed choice about
       representation. For example, the ALJ should ask an unrepresented claimant the
26     following questions on the record:
       •   Did you receive the hearing acknowledgment letter and its enclosure(s)? (If not,
27         the ALJ will provide the claimant with a copy and the opportunity to read the
           letter.) The ALJ will enter into the record the acknowledgment letter and
28         enclosure(s) sent to the unrepresented claimant.

Case No. C 05-5085 JF
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(JFLC1)

|   |   |   |
|---|---|---|
| 1 | • | Do you understand the information contained in that letter concerning representation? (If not, the ALJ will explain the claimant's options regarding representation, as outlined in the acknowledgment letter. Specifically, the ALJ will explain the availability of both free legal services and contingency representation as well as access to organizations that assist individuals in obtaining representation. |

Once the ALJ has determined that the claimant is capable of making an informed choice, he or she will either secure on the record the claimant's decision concerning representation, or obtain from the claimant a written waiver of the claimant's right to representation, which will be marked as an exhibit.

HALLEX I-2-6-52(A). However, the Ninth Circuit has concluded that HALLEX "is a purely internal manual and as such has no legal force and is not binding." *Moore v. Apfel,* 216 F.3d 864, 868 (9th Cir. 2000). Like the section at issue in *Moore*, HALLEX I-2-6-52(A) "does not prescribe substantive rules" and "is strictly an internal guidance tool, providing policy and procedural guidelines to ALJs and other staff members." *Id.* Accordingly, failure to adhere precisely to the guidelines does not constitute reversible error by the ALJ.

Moreover, the record reflects that the ALJ substantially complied with the guidelines:

| | |
|---|---|
| ALJ: | Did you understand that you have the right to be represented by an attorney in this matter? |
| Plaintiff: | Yes, I did and I was just talking – I never understood that the attorneys worked on a – |
| ALJ: | Oh, okay. |
| Plaintiff: | – contingency, so I thought you had to pay for them. I just – |
| ALJ: | They, well, when you say a contingency, you do not under Social Security rules have to advance anybody money up front. They are limited to receiving payment only if and when they're successful in pursing [sic] your claim for you and then are limited to the lessor of 25 % of back due benefits or $5,300 or whichever, I say, which ever is less. |
| Plaintiff: | I just found that out. |
| ALJ: | So if you want to look into getting an attorney or thing [sic] about getting one, I would put the hearing over one time if you want to do that so that you could consult with an attorney and look into getting one. |
| Plaintiff: | I don't think I need one. I don't know what attorneys do in these matters. |
| ALJ: | Well, they basically put together your medical records and assist you, I guess, in presenting your testimony or your case in the best possible light. That's the way I would put it. |
| Plaintiff: | I'm okay, I – |
| ALJ: | Okay. So you want to go forward with the hearing without an attorney? |
| Plaintiff: | [INAUDIBLE for 11 seconds.] |
| ALJ: | Is that yes? |
| Plaintiff: | Yes. |
| ALJ: | Okay. All right. |

Transcript 301-02. While the ALJ did not explain the availability of free legal services or the existence of organizations that help find representation, she offered Plaintiff an opportunity to postpone the hearing in order to find and hire an attorney on a contingency-fee basis so that he could present his case "in the best possible light." Plaintiff expressed no interest in such a postponement and nothing in the record indicates that he did not understand the ALJ's explanation of his rights when he declined such a postponement.

Plaintiff argues that even if he waived counsel knowingly, the ALJ failed to develop the record adequately given that Plaintiff was unrepresented. The Ninth Circuit has explained that

> [w]hen a claimant appears at a hearing without counsel, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. He must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir.1978). *See also Vidal v. Harris*, 637 F.2d 710, 713 (9th Cir.1981). Lack of counsel does not affect the validity of the hearing unless the plaintiff can demonstrate prejudice or unfairness in the administrative proceedings. *Vidal*, 637 F.2d at 713.

*Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985). Plaintiff criticizes the development of the record with respect to the extent and nature of Plaintiff's physical and mental condition, and the absence of updated medical records.[3] However, Plaintiff does not articulate the prejudice that arose from these asserted deficiencies. For example, Plaintiff does not explain what updated medical records would have shown, what unfairness would have been avoided by cross-examination of the vocational expert by a lawyer, or what facts favorable to Plaintiff were not uncovered. Plaintiff does list a number of questions that counsel might have asked, but the Court cannot simply assume that the answers to these questions would have been helpful to Plaintiff.

Moreover, contrary to Plaintiff's assertions, the ALJ inquired conscientiously into the relevant facts. Three examples demonstrate this: First, the ALJ sent Plaintiff for a consultative examination prior to the hearing. Transcript 126-27; *see also id.* at 23 (ALJ referring to the

---

[3] As discussed above, the Court perceives deficiencies in the record with respect to prior relevant work. Plaintiff also complains of these deficiencies with respect to the impact of the absence of counsel. The Court need not address those deficiencies again here, but will limit its analysis to the additional asserted deficiencies.

consultative orthopedist's report).  Second, the ALJ permitted the vocational expert to examine Plaintiff during the administrative hearing, *id.* at 310-15, examined the vocational expert, *id.* at 315-18, allowed Plaintiff to inform her questioning of the vocational expert, *id.* at 315-16 (explaining limitation posed by inability to travel), and gave Plaintiff the opportunity to question the vocational expert, *id.* at 318-19.  Third, the ALJ requested and considered Plaintiff's updated medical records.  *See id.* at 319 (explaining that she would request and consider the records); *id.* at 22 (referring to records dated July 23, 2004, a month after the hearing); *id.* at 253-59 (request to Kaiser dated August 12, 2004, and medical records dated after the hearing).  Accordingly, the Court concludes that, beyond the deficiencies identified above in the discussion of past relevant work, the ALJ developed the record adequately and satisfied her obligation to inquire thoroughly with respect to all relevant facts.

## IV. ORDER

Good cause therefor appearing, IT IS HEREBY ORDERED that:

1. Defendant's motion for summary judgment is GRANTED:
2. Plaintiff's motion for summary judgment is DENIED; and
3. The Clerk of the Court shall close the file.

DATED: March 27, 2007.

JEREMY FOGEL
United States District Judge

1 | This Order has been served upon the following persons:

2 | Katherine Loo            katherine.loo@ssa.gov,

3 | Harvey Peter Sackett     hps@hpspc.com, lucyc@sackettlaw.com; julie@sackettlaw.com; juanita@sackettlaw.com

4 |

5 | Sara Winslow             sara.winslow@usdoj.gov, kathy.terry@usdoj.gov; claire.muller@usdoj.gov

11

Case No. C 05-5085 JF
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(JFLC1)